## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **ENCHANT CHRISTMAS LIGHT MAZE & MARKET LTD.,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) ) | **Case No.:** <br> **JURY DEMAND** |
| **GLOWCO, LLC,** ) <br> **EXHIBAU US LLC,** ) <br> **PATRICK WALLAIN, and** ) <br> **CHRIS STACEY,** ) ) | |
| **Defendants.** ) | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT,
## MISAPPROPRIATION OF TRADE SECRETS,
## & VIOLATION OF TENNESSEE PERSONAL & COMMERCIAL COMPUTER ACT

Plaintiff Enchant Christmas Light Maze & Market Ltd. files this Complaint against Defendants Glowco, LLC, Exhibau US LLC, Patrick Wallain and Chris Stacey.

### SUMMARY OF CONTROVERSY

1.      Plaintiff owns copyrights in 16 sculptures that it uses in interactive light shows primarily in baseball stadiums in both the United States and Canada.  Upon information and belief, Defendants, conspiring with each other, have infringed Plaintiff's exclusive copyrights in at least 12 of these sculptures by illegally reproducing, importing and distributing them. Defendants have also unlawfully accessed and misappropriated Plaintiff's trade secrets, including both (a) Plaintiff's electronic Storage Account that contains digital files used to fabricate its sculptures and (b) its proprietary business information.  Unless Defendants are immediately and preliminarily enjoined from infringing Plaintiff's copyrights and misappropriating Plaintiff's Storage Account, Defendants will further harm Plaintiff by publicly

{01942133.19 }

displaying infringing copies of Plaintiff's works in a show scheduled to run nightly from November 22 through December 31, 2019 in Nashville at the First Tennessee Park (the "Nashville Glow Show"). Plaintiff also seeks a permanent injunction and other relief. The scope of Defendants' infringement has only recently come to light, and Plaintiff needs expedited discovery to learn the full extent of Defendants' misconduct.

## PARTIES

2. Plaintiff Enchant Christmas Light Maze & Market Ltd. ("Enchant" or "Plaintiff") is incorporated under the laws of British Columbia, Canada, with its principal place of business in North Vancouver, British Columbia. Enchant owns and operates Enchant Christmas, which is an immersive holiday experience featuring what is billed as the "World's Largest Christmas Light Maze," an artisan Christmas market, and more.

3. Defendant Glowco, LLC ("Glowco") is a limited liability company existing under the laws of Tennessee, with its principal place of business in Tennessee. Its registered agent, Daniel Kris Wiatr, is located at 1212 8th Ave. S., Nashville, TN 37203-5060. Glowco is advertising and selling tickets for an event at First Tennessee Park in Nashville that is set to run nightly from November 22 through December 31, 2019.

4. Defendant Exhibau US LLC ("Exhibau") is a limited liability company existing under the laws of Tennessee, with its principal place of business in Tennessee. Its registered agent, Patrick Wallain, is located at 202 Depot St., Soddy Daisy, TN 37379-6405. Upon information and belief,[1] Wallain instructed third parties in China to ship infringing copies of Plaintiff's works to Exhibau's facility in Tennessee, where they have been/still are being stored;

---

[1] Plaintiff reasonably believes that all allegations beginning with "upon information and belief" will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

and Exhibau is acting in concert with the other Defendants in this judicial district to further the misconduct alleged in this Complaint.

5.     Upon information and belief, Defendant Patrick Wallain is a resident of and domiciled in Arizona.  Upon information and belief, he is the owner of Exhibau, a company that regularly conducts business in this judicial district.  He is also the Executive Producer and Chief Technology Officer (CTO) of the Nashville Glow Show.

6.     Upon information and belief, Defendant Chris Stacey is a resident of and domiciled in Tennessee.  He is the founder and CEO of Glowco and regularly conducts business in this judicial district.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), 1338 (copyright), and 1367 (supplemental jurisdiction).  This action involves federal questions, and diversity exists among the parties with the amount in controversy exceeding $75,000.

8.     Personal jurisdiction is proper over each Defendant as a significant part of Defendants' unlawful actions occurred in the forum state, and Defendants have imported and stored the infringing works in Tennessee for the Nashville Glow Show.

9.     This Court has personal jurisdiction over Glowco because it was formed under the laws of Tennessee; it maintains its principal place of business in this judicial district; and its activities giving rise to Plaintiff's causes of action occurred in and with substantial connection to the forum state.

10.     This Court has personal jurisdiction over Exhibau because it was formed under the laws of Tennessee, maintains its principal place of business in this judicial district, and

Exhibau's activities giving rise to Plaintiff's causes of action occurred in or with substantial connection to the forum state.

11.     This Court has personal jurisdiction over Wallain because Wallain has purposefully availed himself of the privilege of acting in this state and causing consequences here; Plaintiff's causes of action arise from Wallain's activities here; and Wallain's acts and consequences have a substantial connection with this judicial district to make the exercise of jurisdiction over him reasonable.

12.     This Court has personal jurisdiction over Stacey because he resides here and relevant actions giving rise to Plaintiff's claims occurred in Tennessee.

13.     As set forth below, Defendants have also conspired with each other to infringe on Plaintiff's copyrights, to steal its trade secrets, and to harm Plaintiff.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## STATEMENT OF FACTS

15.     Enchant held its first Enchant Christmas in Canada in 2016 (in Vancouver), and its first Enchant Christmas in the United States in 2017 (where the Texas Rangers play major league baseball at Globe Life Park in Arlington, Texas).

16.     Each year, Enchant has continued to grow the Enchant Christmas show.

17.     In 2018 alone, approximately 600,000 people visited Enchant Christmas and saw Enchant's sculptures in the United States.

18.     In 2019, Enchant is hosting Enchant Christmas at the Nationals Park in Washington, DC; T-Mobile Park in Seattle; and Tropicana Field in St. Petersburg, Florida.

19.     Enchant plans to expand into 30 markets across the United States, and has plans to introduce its copyright- protected sculptures and business model to Nashville.

20.    In 2016 and early 2017, Wallain worked as an independent contractor for Enchant where he managed the production installation for Enchant events, including Enchant Christmas. Enchant's founder and CEO/President, Kevin Johnston, considered Wallain his "right-hand man" when it came to operations. Wallain helped Johnston build a spreadsheet on each city (including weather, population, location), and identified which markets would be most viable to Enchant in the United States. Wallain knew that Nashville, Tennessee was on Enchant's short list of 30 U.S. cities.

21.    Through his work with Enchant, Wallain was given access to Enchant's Google Drive-Cloud storage account ("Storage Account"), which included some of Enchant's trade secrets such as the design files for its sculptures.

22.    The Storage Account was password protected and all persons with access were under a duty to maintain its contents as confidential and secret, including Wallain.

23.    Wallain was not authorized to disclose any of the information from Enchant's Storage Account to others without Enchant's consent.

24.    Through his work with Enchant, Wallain was also given access to additional trade secrets belonging to Plaintiff concerning Enchant Christmas, including but not limited to Enchant's gross revenues, net profits, ticket sales, numbers of attendees, merchandise, sponsorships, labor costs, and other related matters about Plaintiff's business work (together with data on the Storage Account, Enchant's "Trade Secrets").

25.    Upon information and belief, Wallain shared many of Enchant's Trade Secrets with Stacey via email, which he had no authority to do.

26.    Upon information and belief, as recently as July 15, 2019, long after Wallain's work with Enchant had ended (as had his authority to access Enchant's Storage Account and

Trade Secrets), Wallain accessed Enchant's files on the Storage Account without authorization or Enchant's knowledge.

27.    Enchant subsequently learned via the Storage Account's access logs that, upon information and belief, Wallain surreptitiously downloaded some of Enchant's Trade Secrets, including technical drawings and sculpture designs.

28.    Further information about Enchant's business and Wallain's misconduct are found in the Declaration of Kevin Johnston, founder of Enchant. (Attached as **Exhibit A** to Enchant's Notice of Filing).

29.    Upon information and belief, Wallain shared some of Enchant's Trade Secrets with various Exhibau employees.

30.    Upon information and belief, Wallain also shared some of Enchant's design files from the Storage Account with Chinese manufacturers. As explained further below, Enchant confirmed this fact through a computer forensics expert, who issued his report to Enchant on approximately September 22, 2019. (Declaration of certified computer forensic examiner Christopher Vanadia and his report attached as **Exhibit B** to Notice of Filing).

31.    Upon information and belief, Wallain also instructed the Chinese manufacturers to copy and fabricate Plaintiff's sculptures.

32.    Upon information and belief, Wallain thereafter imported the infringing sculptures into the United States without Enchant's knowledge or authority.

33.    Liang Quigdi, who personally oversees the fabrication of all of Enchant's sculptures in China, is familiar with all sculptures Enchant has had fabricated in China, including its polar bear and deer sculptures.

34.    Ms. Liang personally saw unauthorized copies of Enchant's polar bear and deer sculptures at Evermore (a fabrication company in China).

35.    Ms. Liang took a photograph of the polar bear sculpture that she saw at Evermore, and concluded it was an unauthorized copy of Enchant's polar bear sculpture.  A copy of this photograph is included in her Declaration (which is attached as **Exhibit C** to the Notice of Filing).

36.    Upon information and belief, Wallain instructed Evermore to copy Enchant's sculptures.

37.    Another Chinese company who Ms. Liang had worked with to fabricate Enchant's sculptures (Lejin) contacted Ms. Liang after Wallain had solicited Lejin to produce Enchant's designs, because Lejin was confused why someone other than Enchant – Wallain – sought to fabricate Enchant's sculptures.

38.    Enchant's computer forensics examiner, Christopher Vanadia, conducted an analysis and confirmed that 37 of the files that Wallain solicited to Lejin identically matched Enchant's files.

39.    For the 37 files, Defendant Wallain did not even change the file names or folders of the stolen works.

40.    As an example, upon information and belief, Wallain sent the following design file to Lejin for the fabrication of polar bear sculptures as seen here:



41. Attached as **Exhibit T** to the NOF is a summary chart showing the similarity between design files used to build 12 of Plaintiff's copyright-protected sculptures (which were stored on Plaintiff's Storage Account), and 12 design files that Defendants used to fabricate infringing sculptures.

42. One such comparison from **Exhibit T** can be seen here:



43. On one occasion while Ms. Liang was visiting Evermore, she was surprised to see that they had a copy of Enchant's polar bear sculpture seen in the photograph she took below, as

44.   Upon information and belief, the sculptures Wallain had fabricated

identical to Enchant's polar bear sculptures. Alternatively, the polar bear

substantially similar, if not strikingly similar.

45.   Ms. Liang understands that Wallain sent Enchant's designs to [multi]

for fabrication, not just Evermore and Lejin.



{01942133.19 }

46. Ms. Liang obtained the following photograph of Wallain while posing with workers at Lejin. She recognized him because she had previously met him at Enchant in Vancouver.



47. As set forth in her Declaration, Ms. Liang also obtained a copy of a shipping document showing that Evermore was exporting goods to Tennessee. The shipping document lists Glowco, Exhibau, and Wallain by name:

| Seller Name and Address: | | Buyer Name/Address or Name/IRS#: | |
|---|---|---|---|
| EVERMORE ENTERPRISE (ZHEJIANG) LTD NO.27 XIANXING ROAD,XIANLIN TOWN, YUHANG DISTRICT,HANGZHOU, ZHEJIANG,CHINA | | Glowco LLC Patrick Wallain 602-772-1707 1212 8th Avenue South, Suite 102 Nashville, TN 37203 USA | |
| Manufacturer*(Supplier) Name and Address: | Same as Seller ■ | Importer Name/Address or Name/IRS#: | Same as Buyer ☐ |
| | | Exhibau US LLC Patrick Wallain 602-772-1707 202 Depot Street Soddy Daisy, TN 37379 USA | |
| Country of origin: China | | | |
| Cont. Stuffing Location Name/ Address: | Same as Seller ■ | Consignee Name/Address or Name/IRS#: | Same as Buyer ☐ |
| | | Exhibau US LLC Patrick Wallain 602-772-1707 202 Depot Street Soddy Daisy, TN 37379 USA | |
| Consolidator Name and Address: | Same as Seller ■ | Ship to Name and Address: | Same as Buyer ☐ |
| | | Exhibau US LLC Patrick Wallain 602-772-1707 202 Depot Street Soddy Daisy, TN 37379 USA | |

48.     Upon information and belief, Defendants imported unauthorized copies of Plaintiff's sculptures to Tennessee to use in the Nashville Glow Show.

49.     Upon information and belief, Evermore sent a container with goods from China to the United States around the end of August 2019, and it typically takes around 25 days to travel to the United States, meaning that Defendants' infringing goods from Evermore most likely arrived in the United States in late September 2019.

50.     Upon information and belief, Lejin also sent goods to the United States at Wallain's request in or around September.

51.     Upon information and belief, these goods have been stored at Exhibau's storage facility in Soddy Daisy, Tennessee.

52.     Upon information and belief, Defendants have shipped the unauthorized copies of Plaintiff's sculptures from Soddy Daisy to Nashville or are in the process of doing so.

53.     Upon information and belief, Defendants have copied and imported the infringing goods for public display at their upcoming Nashville Glow Show, all without Plaintiff's authority.

54.     Enchant's sculptures are original works, essential to Enchant's business.

55.     On October 8, 2019, Plaintiff applied for copyright registration for 16 of its sculptures with the United States Copyright Office on an expedited basis.  Plaintiff did not receive any certificates of registration back from the Copyright Office until October 18, 2019 (three or fewer), and did not receive the bulk of them until October 23, 2019.

56.     The 12 sculptures identified in **Exhibits D through O** are contained in the 37 digital files that, upon information and belief, Wallain sent Lejin to fabricate.

57.     Upon information and belief, Wallain obtained unauthorized access to Plaintiff's digital files on the remaining 4 sculptures identified in **Exhibits P through S**, and likely instructed Lejin or another Chinese company to fabricate them.

58.     Attached as **Exhibit D** to the Notice of Filing ("NOF") is Certificate of Registration No. VA 2-173-211: 2017 Polar Bear Cub No. 02 (3D Sculpture), along with a photograph depicting the sculpture.

59.     Attached as **Exhibit E** to the NOF is Certificate of Registration No. VA 2-173-212: 2017 Polar Bear Cub No. 01 (3D Sculpture), along with a photograph depicting the sculpture.

60.     Attached as **Exhibit F** to the NOF is Certificate of Registration No. VA 2-173-230: 2017 Pine Tree 30ft (3D Sculpture), along with a photograph depicting the sculpture.

61.     Attached as **Exhibit G** to the NOF is Certificate of Registration No. VA 2-173-236: 2017 Snowflake 20ft (3D Sculpture), along with a photograph depicting the sculpture.

62.     Attached as **Exhibit H** to the NOF is Certificate of Registration No. VA 2-173-239: 2017 Reindeer (3D Sculpture), along with a photograph depicting the sculpture.

63.     Attached as **Exhibit I** to the NOF is Certificate of Registration No. VA 2-173-246: 2017 Polar Bear Mama (3D Sculpture), along with a photograph depicting the sculpture.

64.     Attached as **Exhibit J** to the NOF is Certificate of Registration No. VA 2-173-253: 2017 Crystal Base No. 02 (3D Sculpture), along with a photograph depicting the sculpture.

65.     Attached as **Exhibit K** to the NOF is Certificate of Registration No. VA 2-173-259: 2016 Santa Sleigh (3D Sculpture), along with a photograph depicting the sculpture.

66.     Attached as **Exhibit L** to the NOF is Certificate of Registration No. VA 2-173-266: 2016 Reindeer Pose No. 02 (3D Sculpture), along with a photograph depicting the sculpture.

67.     Attached as **Exhibit M** to the NOF is Certificate of Registration No. VA 2-173-289: 2016 Reindeer Pose No. 06 (3D Sculpture), along with a photograph depicting the sculpture.

68.     Attached as **Exhibit N** to the NOF is Certificate of Registration No. VA 2-173-300: 2016 Reindeer Pose No. 07 (3D Sculpture), along with a photograph depicting the sculpture.

69.     Attached as **Exhibit O** to the NOF is Certificate of Registration No. VA 2-173-310: 2016 Reindeer Pose No. 10 (3D Sculpture), along with a photograph depicting the sculpture.

70.     Attached as **Exhibit P** to the NOF is Certificate of Registration No. VA 2-173-226: 2016 Reindeer Pose No. 01 (3D Sculpture), along with a photograph depicting the sculpture.

71.     Attached as **Exhibit Q** to the NOF is Certificate of Registration No. VA 2-173-227: 2017 Crystal Base No. 01 (3D Sculpture), along with a photograph depicting the sculpture.

72.     Attached as **Exhibit R** to the NOF is Certificate of Registration No. VA 2-173-304: 2016 Reindeer Pose No. 08 (3D Sculpture), along with a photograph depicting the sculpture.

73.     Attached as **Exhibit S** to the NOF is Certificate of Registration No. VA 2-173-308: 2017 Crystal Base No. 03 (3D Sculpture), along with a photograph depicting the sculpture.

74.     Plaintiff's copyright-protected sculptures referenced in **Exhibits D through S** are collectively referred to as Plaintiff's "Works."

75.     Upon information and belief, Defendants have acted in concert with each other to reproduce unauthorized copies of Plaintiff's Works.

76.     Upon information and belief, Defendants have acted in concert with each other to import unauthorized copies of Plaintiff's Works into the United States without Plaintiff's authority, depriving Plaintiff of the exclusive right to distribute its Works.

77.     Upon information and belief, unless enjoined, Defendants are actively working in concert with each other to publicly display unauthorized copies of Plaintiff's Works at the Nashville Glow Show beginning November 22, 2019.

78.     Upon information and belief, Defendants' infringing copies are exact replicas of Plaintiff's Works.

79.     Alternatively, upon information and belief, Defendants' infringing copies are substantially similar to Plaintiff's Works, upon information and belief.

80.     Alternatively, upon information and belief, Defendants' infringing copies are strikingly similar to Plaintiff's Works.

81. Upon information and belief, Defendants accessed Plaintiff's Storage Account to misappropriate trade secrets concerning Plaintiff's Works without Plaintiff's authority and misappropriated the same.

82. Upon information and belief, the individual Defendants, Wallain and Stacey, have acted herein in both their individual capacities and as agents on behalf of their respective companies, Exhibau and Glowco.

83. Upon information and belief, Wallain induced, caused and/or materially contributed to Exhibau's and/or Glowco's infringement of the Plaintiff's Works by providing design files to Plaintiff's Works with intent and knowledge that they would be copied.

84. Upon information and belief, Stacey induced, caused and/or materially contributed to Glowco's infringement of the Plaintiff's Works.

85. Upon information and belief, Wallain has enjoyed a direct financial benefit from Exhibau's and/or Glowco's infringement of Plaintiff's Works and had the right and ability to supervise Exhibau's and/or Glowco's infringement.

86. Upon information and belief, Stacey has enjoyed a direct financial benefit from Glowco's infringement of Plaintiff's Works and had the right and ability to supervise Glowco's infringement.

87. Defendants' misconduct described herein has caused Enchant to suffer irreparable harm, including the loss of opportunity to distribute its unique products, the inability to fully control its works, loss of control over its intellectual property, diminishment of its competitive position in the market, loss of control over the marketing strategy for the works, and a loss of goodwill.

88.     Upon information and belief, Defendants actions have infringed Plaintiff's exclusive rights to reproduce the Works, to import and distribute them, to publicly display them and/or to prepare derivative works based upon them.

89.     Stacey approached Enchant about purchasing a license to host Enchant Christmas in Nashville, after attending Enchant Christmas in Arlington, Texas in 2017.  Enchant turned down Stacey's offer, because Enchant wanted to maintain control over the reproduction, distribution and display of its copyrighted works, as well as the quality, marketing, communications and growth of its shows, and because Enchant itself plans to host Enchant Christmas in Nashville.

## CAUSES OF ACTION
### (Against all Defendants)

## COUNT I – COPYRIGHT INFRINGEMENT:
## UNAUTHORIZED REPRODUCTION AND/OR DERIVATIVE WORKS

90.     All other paragraphs are fully incorporated herein.

91.     Each of Plaintiff's Works is an original expression subject to copyright protection under 17 U.S.C. §§ 101, *et seq*.

92.     Plaintiff is the owner of all exclusive rights, title, and interest in and to the copyrights in these Works.

93.     Plaintiff has properly registered the copyrights in the Works with the United States Copyright Office.

94.     As the copyright owner, Plaintiff has the exclusive right to reproduce Plaintiff's Works and to prepare derivative works based upon them.  See 17 U.S.C. §§ 106(1) and 106(2).

95.     Defendants did not obtain permission from Plaintiff to copy its Works.

96.     Upon information and belief, Defendants have infringed the Plaintiff's exclusive copyrights in Plaintiff's Works by copying the original and protected works and manufacturing identical, substantially similar, or strikingly similar infringing works, or by preparing derivative works based upon them.

97.     Defendants had access to Plaintiff's Works.

98.     Upon information and belief, Defendants have infringed Plaintiff's copyrights directly, contributorily, and/or vicariously, and they have acted in conspiracy with each other to further their infringement.

99.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff has suffered irreparable injury from the disclosure and unauthorized use of Plaintiff's original works, which irreparable harm will only continue unless Defendants are enjoined.

100.    Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' copying for each of Plaintiff's Works.

101.    Plaintiff is also entitled to its actual damages for each of Plaintiff's Works infringed.

**COUNT II – COPYRIGHT INFRINGEMENT:**
**UNAUTHORIZED IMPORTATION AND DISTRIBUTION**

102.    All other paragraphs are fully incorporated herein.

103.    As the copyright owner, Plaintiff has the exclusive right to import copies of Plaintiff's Works into the United States and to distribute them.  See 17 U.S.C. §§ 602 & 106(3).

104.    Defendants' importation of the infringing works into the United States violates Plaintiff's rights under the Copyright Act.

105.     Upon information and belief, Defendants have imported infringing works into the United States without Plaintiff's authority and distributed them for use at the Nashville Glow Show.

106.     Upon information and belief, Defendants have infringed Plaintiff's copyrights directly, contributorily, and/or vicariously, and they have acted in conspiracy with each other to further their infringement.

107.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff has suffered irreparable injury from the importation and distribution of Plaintiff's original works, which irreparable harm will only continue unless Defendants are enjoined.

108.     Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' copying for each of Plaintiff's protected works included herein.

109.     Plaintiff is also entitled to its actual damages for each of Plaintiff's Works infringed.

## COUNT III – COPYRIGHT INFRINGEMENT: THREATENED PUBLIC DISPLAY

110.     All other paragraphs are fully incorporated herein.

111.     Plaintiff has the exclusive right to publicly display its Works.  <u>See</u> 17 U.S.C. § 106(5).

112.     Upon information and belief, Defendants intend to display the infringing copies of Plaintiff's Works at the Nashville Glow Show.

113.     Plaintiff has the right to injunctive relief to *prevent* this threatened violation of its exclusive right to publicly display its Works.  <u>See</u> 17 U.S.C. § 502.

114.    Upon information and belief, Defendants have acted in conspiracy with each other to further their threatened infringement.

115.    Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' threatened violations of Plaintiff's exclusive right to publicly display its copyrighted works.

116.    If Defendants display the infringing copies of Plaintiff's Works, then Defendants will have infringed Plaintiff's copyrights directly, contributorily, and/or vicariously.

117.    If Defendants display the infringing copies of Plaintiff's Works, then Plaintiff's rights will have been violated, and Plaintiff will be entitled to seek not only injunctive relief but also to elect between statutory damages and actual damages for each of Plaintiff's Works infringed through Defendant's unauthorized public display, as well as reimbursement of Plaintiff's attorneys' fees.

**COUNT IV – MISAPPROPRIATION OF TRADE SECRETS UNDER THE TENNESSEE UNIFORM TRADE SECRETS ACT, TENN. CODE ANN. § 47-25-1702 *et seq.***

118.    All other paragraphs are fully incorporated herein.

119.    Plaintiff spent considerable time and expense creating its original works that it kept password-protected in its Storage Account.

120.    Plaintiff took reasonable measures to keep its Trade Secrets secret.

121.    All persons with access to Plaintiff's Storage Account and other Trade Secrets were under a duty to keep the information secret and confidential.

122.    This information has significant commercial value as it regards original and creative designs, as well as other proprietary and competitive business information belonging to Plaintiff, that is used in commerce and that helps create a positive experience for customers at holiday events.

123.    This information constitutes trade secrets because it has independent economic value from not being generally or widely known and not being properly accessible by others due to Plaintiff's efforts to maintain secrecy.

124.    Wallain, who had access to the Trade Secrets, was under a duty to maintain the secrecy and confidentiality and could not disclose the information to outsiders.

125.    Wallain disclosed Plaintiff's Trade Secrets to Stacey without Plaintiff's knowledge or permission.

126.    At the time Wallain disclosed Plaintiff's Trade Secrets to him, Stacey had actual and/or constructive knowledge that Wallain had worked for Plaintiff; that Wallain no longer had authority to use or distribute Plaintiff's materials; that Wallain obtained the materials improperly; and that Wallain had a duty to limit the use or maintain the secrecy of Plaintiff's materials.

127.    Wallain also shared the trade secrets to Exhibau employees by sharing files from the Storage Account with them.

128.    This sharing was shown on the Storage Account's access log.

129.    Wallain's misappropriation was improper as it constituted theft, breach of a duty to maintain the secrets and to limit his use of the materials to the time of his contracted work, and unauthorized access through electronic means.

130.    Plaintiff did not know that Wallain would access its Trade Secrets without its knowledge or authority, or that he had the means to do so.

131.    Such Trade Secrets have significant independent economic value, as they relate to numerous financial and other important matters for Plaintiff's business.

132.    Upon information and belief, Defendants have used and will use Plaintiff's Trade Secrets for their own commercial gain and business events, including the Nashville Glow Show.

133.     Defendants have acted in conspiracy with each other to further their misappropriation and unauthorize use of Plaintiff's Trade Secrets.

134.     Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' misappropriation and use of Plaintiff's Trade Secrets.

135.     Plaintiff is entitled to immediate, preliminary and permanent relief enjoining Defendants from using and further misappropriating Plaintiff's Trade Secrets found in Plaintiff's Storage Account.

136.     Plaintiff is also entitled to preliminary and permanent injunctive relief enjoining Defendants from using and further misappropriating Plaintiff's other Trade Secrets.

137.     Defendants have been unjustly enriched by their misappropriation and use of Plaintiff's Trade Secrets, and Plaintiff has been harmed by the disclosure and use of its Trade Secrets, and the loss of control pertaining to such, entitling Plaintiff to recover damages.

138.     Additionally, to the extent Defendants further misappropriate Plaintiff's Trade Secrets, and refuse to stop or are not enjoined, Plaintiff will be entitled to money damages for such further misappropriation.

139.     Defendants' misappropriation of Plaintiff's Trade Secrets has been willful and/or malicious, entitling Plaintiff to recover exemplary/double damages, as well as attorneys' fees.

**COUNT V – MISAPPROPRIATION OF TRADE SECRETS UNDER THE FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *et seq*.**

140.     All other paragraphs are fully incorporated herein.

141.     Plaintiff took reasonable measures to protect its Trade Secrets.

142.     Plaintiff's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means.

143.    When Wallain worked as an independent contractor for Enchant, he had access to Plaintiff's Storage Account and other Trade Secrets.

144.    Wallain knew that Plaintiff's Storage Account included valuable Trade Secrets and knew that Plaintiff expected him to maintain their secrecy.

145.    As previously mentioned, Defendants acquired Plaintiff's Trade Secrets without authorization, via Wallain's breach of duty to Plaintiff and theft of Trade Secrets.

146.    Defendants used, made copies of, and disclosed Enchant's Trade Secrets without Plaintiff's authorization.

147.    Defendants used improper means to acquire Plaintiff's Trade Secrets.

148.    Defendants received and possessed Enchant's Trade Secrets, knowing that they were stolen and obtained without authorization.

149.    Defendants conspired to commit the aforementioned offenses and took actions in furtherance to, and actually did, accomplish such offenses.

150.    Plaintiff's Trade Secrets are intended for its own use, and Plaintiff has used them in interstate and foreign commerce, as they have or will be used in various events in Canada and the United States, including in Washington, DC, Seattle and St. Petersburg.

151.    Defendants have acted in conspiracy with each other to further their misappropriation of Plaintiff's Trade Secrets.

152.    Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' misappropriations and uses of Plaintiff's Trade Secrets.

153.     Plaintiff is entitled to immediate, preliminary and permanent relief enjoining Defendants from using and further misappropriating Plaintiff's Trade Secrets found in Plaintiff's Storage Account.

154.     Plaintiff is also entitled to preliminary and permanent injunctive relief enjoining Defendants from using and further misappropriating Plaintiff's other Trade Secrets.

155.     Additionally, to the extent Defendants further misappropriate Plaintiff's Trade Secrets, and refuse to stop or are not enjoined, Plaintiff will be entitled to money damages for such further misappropriation.

156.     Defendants have been unjustly enriched by their misappropriation and use of Plaintiff's Trade Secrets, and Plaintiff has been harmed by the disclosure and use of its Trade Secrets, and the loss of control pertaining to such, entitling Plaintiff to recover damages.

157.     Defendants' misappropriation of Plaintiff's Trade Secrets has been willful and/or malicious, entitling Plaintiff to recover exemplary/double damages, as well as attorneys' fees.

## COUNT VI – VIOLATION OF TENNESSEE PERSONAL AND COMMERCIAL COMPUTER ACT, TENN. CODE ANN. § 39-14-601 *et seq.*

158.     All other paragraphs are fully incorporated herein.

159.     As previously mentioned, Defendant Wallain intentionally accessed Plaintiff's information and the computer Storage Account at a time in which he had no authorization to do so.

160.     Defendant Wallain accessed the information on the Storage Account for the purpose of obtaining property and/or money.

161.     Defendant Wallain acted with the purpose of maliciously gaining access to Plaintiff's computer material and having unauthorized copies of the materials made for Defendants' benefit.

162.    Upon information and belief, the Defendants acted in concert and made or caused to be made copies of Plaintiff's material and works that were in the Storage Account.

163.    Upon information and belief, it is likely that further investigation and discovery will provide evidentiary support for and make known the full extent of Defendants' violations.

164.    Defendants have been unjustly enriched by their unauthorized access and use of Plaintiff's information and computer Storage Account and have been unjustly enriched by such actions.

165.    Plaintiff is entitled to recover relief for all damages it has sustained as a result of Defendants' violations under the Tennessee Personal and Commercial Computer Act, including lost profits and the cost of the action.

## **PRAYER FOR RELIEF**

WHEREFORE, the above premises considered, Plaintiff respectfully requests the following relief:

1.    That proper process issue and be served upon Defendants;

2.    An immediate order that Defendants take affirmative steps to preserve all records related to their misconduct alleged in this Complaint through the pendency of this lawsuit, at the conclusion of which Plaintiff will seek an order pursuant to 17 U.S.C. § 503 that requires the impoundment and destruction of all infringing copies of Plaintiff's Works, as well as all records documenting the manufacture, sale, and/or receipt of things involved in any such violation;

3.    A temporary restraining order, preliminary injunction, and permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, assigns and all persons acting in concert or participation with each or any of them to immediately cease directly and indirectly infringing Plaintiff's Works and causing,

enabling, facilitating, encouraging, promoting, inducing and / or participating in the infringement of any of Plaintiff's rights protected by the Copyright Act connected with Plaintiff's Works;

4.      A declaration that Defendants are directly, vicariously, and/or contributorily liable for copyright infringement of Plaintiff's rights of Plaintiff's Works;

5.      Pursuant to 17 U.S.C. § 504(b), that Defendants be ordered to pay Plaintiff its actual damages, including Defendants' direct and indirect profits from their copyright infringement as well as Plaintiff's losses, as will be proved at trial, including a finding that Defendants are jointly and severally liable for the profits of each other;

6.      That Defendants be ordered to pay costs, pursuant to Pursuant to 17 U.S.C. § 505;

7.      A preliminary and permanent injunction forbidding Defendants from using, sharing or further misappropriating Plaintiff's Trade Secrets;

8.      An accounting of all of Defendants' finances related to Defendants' theft of Plaintiffs' trade secrets, infringements on Plaintiff's copyrights, and Defendant's violations of the Tennessee Personal and Commercial Computer Act;

9.      An award of exemplary/double damages and attorneys' fees for Defendants' willful and malicious misappropriation of Plaintiff's Trade Secrets;

10.     An award of damages sustained, including lost profits, and the cost of the action, pursuant to the Tennessee Personal and Commercial Computer Act;

11.     An award of pre-judgment and post-judgment interest according to law, as applicable; and

12.     All other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a jury trial.

**DATED** this the 30th day of October, 2019.

Respectfully submitted,

/s/ Stephen J. Zralek

Stephen J. Zralek (BPR No. 018971)
Maria Q. Campbell (BPR No. 035515)
Shea T. Hasenauer (BPR No. 035616)
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, Tennessee 37219
Telephone: (615) 238-6300
Facsimile: (615) 238-6301
szralek@bonelaw.com
mcampbell@bonelaw.com
shasenauer@bonelaw.com

*Counsel for Plaintiff Enchant Christmas Light Maze & Market Ltd.*