IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ENCHANT CHRISTMAS LIGHT MAZE<br>& MARKET LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>GLOWCO, LLC,<br>EXHIBAU US LLC,<br>PATRICK WALLAIN, and<br>CHRIS STACEY,<br><br>    Defendants. | Case No.:<br>JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## SUMMARY OF ARGUMENT

Plaintiff Enchant Christmas Light Maze & Market Ltd. puts on holiday light shows in both Canada and the United States. A key draw to its shows is its proprietary, giant light sculptures. Plaintiff's employees and independent contractors have access to its trade secrets, both those it maintains on its electronic Google Drive-Cloud storage business account ("Storage Account") and those concerning its business. As the right-hand man to Plaintiff's CEO in 2016 and early 2017, Defendant Patrick Wallain had access to Plaintiff's trade secrets and its Storage Account. From the research Plaintiff has conducted, Wallain accessed Plaintiff's Storage Account after his independent contractor role ended without Plaintiff's knowledge or permission, and shared those digital files with Chinese companies, instructing them to copy Plaintiff's sculptures. Plaintiff's forensic examiner compared the digital files Wallain sent the Chinese companies with Plaintiff's digital files and found 37 exact matches in the hash values. Within

those 37 files, a comparison of design files used to build 12 of Plaintiff's copyright-protected sculptures (which were stored on Plaintiff's Storage Account), and 12 design files that Defendants used to fabricate infringing sculptures, reveals images that show Defendants' designs are identical to Plaintiff's designs, or that they are strikingly similar, or are strikingly similar, or are derivatives of Plaintiff's designs. If built, Defendants' sculptures would similarly infringe on Plaintiff's copyright-protected sculptures. Plaintiff reasonably suspects that Defendants have misappropriated the trade secrets found on Plaintiff's Storage Drive to build sculptures that infringe four additional copyright-protected sculptures belonging to Plaintiff, for a total of 16 unique sculptures.

Plaintiff files this memorandum of law in support of its motion for a temporary restraining order and preliminary injunction against Defendants Glowco, LLC, Exhibau US LLC, Patrick Wallain, and Chris Stacey. Plaintiff's Complaint asserts three groups of claims: (1) infringement of Plaintiff's distinct exclusive rights under Sections 106 and 602 of the Copyright Act: reproduction, importation and distribution, public display and preparation of derivative works; (2) misappropriation of Plaintiff's trade secrets in both (a) Plaintiff's electronic Storage Account that contains digital files Plaintiff uses to fabricate its sculptures and (b) Plaintiff's proprietary business information; and (3) violations of the Tennessee Personal and Commercial Computer Act.

With this Motion, Plaintiff seeks a narrow TRO and a preliminary injunction related solely to Defendants' infringement of Plaintiff's copyrights and Defendants' misappropriation of Plaintiff's trade secrets that they obtained from Plaintiff's Storage Account. Plaintiff reserves the right to later seek preliminary and permanent injunctive relief on its other claims, or if additional misconduct is discovered. Unless Defendants are immediately and permanently

{01951896.6 }

enjoined, Defendants will infringe Plaintiff's rights further by publicly displaying infringing copies of Plaintiff's copyright-protected sculptures in a show scheduled to run nightly from November 22 through December 31, 2019 in Nashville at the First Tennessee Park (the "Nashville Glow Show").

Plaintiff has acted swiftly in seeking a TRO. Plaintiff's computer forensic expert finished his report on September 22, 2019, concluding that 37 of the digital files Wallain sent a Chinese fabricating company were identical to Plaintiff's digital files. See Vanadia Decl. at ¶ 6 and pp. 3-5 of his Report (attached as **Exhibit B** to Notice of Filing ("NOF")); Liang Decl. at ¶ 9 (attached as **Exhibit C** to NOF). Upon information and belief, the infringing copies of Plaintiff's Works that Defendant imported from China would not have arrived in the United States until late September 2019. See Liang Decl. at ¶ 14. On October 8, 2019, Plaintiff applied to register the Works with the Copyright Office on an expedited basis. See Certificates of Registration at **Exhibits D through O** to NOF. The bulk of certificates of registration for Plaintiff's Works were not received back from the Copyright Office until Wednesday, October 23, 2019. Although "[a]n author gains 'exclusive rights' in her work immediately upon the work's creation," Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 887 (2019), and although the "effective date of a copyright registration is the day on which an application . . . [has] been received in the Copyright Office," 17 U.S.C. § 411(d), Plaintiff could not have filed suit for copyright infringement until it first obtained registration for its Works. See id. at 888 (citing 17 U.S.C. § 411(a)). As the Supreme Court explained earlier this year, "we conclude that 'registration . . . has been made' within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." Id. at 892.

The scope of Defendants' infringement has only recently come to light, and Plaintiff needs expedited discovery to learn the full extent of Defendants' misconduct. Plaintiff is simultaneously filing a motion for expedited discovery.

Plaintiff's proposed Temporary Restraining Order is attached to the Motion as Exhibit A.

## FACTUAL BACKGROUND

Enchant owns copyrights in multiple sculptures and obtained registrations for these original works on an expedited basis. See Certificates of Registration at **Exhibits D through O**. Additionally, Enchant held designs and other documents as confidential trade secrets. See Johnston Decl. at ¶¶ 8-9 (attached as **Exhibit A** NOF).

In 2016 and early 2017, Patrick Wallain worked as an independent contractor for Enchant and served as Enchant's construction and operations director. See Johnston Decl. at ¶ 6 (attached as **Exhibit A** to NOF). His work with Enchant ended in 2017. Id. at ¶ 7. Like other employees and independent contractors, Wallain had access to Plaintiff's Storage Account. Each person with access to the Storage Account, including Wallain, had a password-protected login; Wallain was under a duty to keep Enchant's information secret and confidential. Id. at ¶ 8. Wallain's contract work with Enchant was limited in time and scope and in no way authorized him to access, use, or disclose Enchant's Storage Account or other trade secrets to outside persons after his work for Enchant ended. Id. at ¶ 9.

After Enchant received notification from Ms. Liang of Enviroshine that Enchant's digital files and technical drawings for Enchant sculptures were being distributed in China, and that Chinese manufacturers were being asked by Wallain to give quotes for manufacturing them, Enchant reviewed the access logs around July 15, 2019 and learned that Wallain had accessed Enchant's files on the Storage Account in early January 2019. Id. at ¶ 12. Wallain not only

accessed Enchant's Storage Account but also shared digital files with Exhibau employees as recently as July 15, 2019. Id. at ¶ 13. He also sent the designs to Chinese manufacturers to produce, and he imported works into the United States for the Defendants' businesses. See Liang Decl. at ¶¶ 9, 13-15 (attached as **Exhibit C** to NOF).

Attached as **Exhibit T** to the NOF is a summary chart showing the similarity between design files used to build 12 of Plaintiff's copyright-protected sculptures (which were stored on Plaintiff's Storage Account), and 12 design files that Defendants used to fabricate infringing sculptures. One such comparison from **Exhibit T** can be seen here:



ENCHANT
"2017 Polar Bear Cub No. 02"
See Exhibit D to the Notice of Filing.

GLOWCO
"Cub 2"
See Exhibit B to the Notice of Filing
(Vandia Declaration and Report at Exhibit E thereto)

Upon information and belief, Defendants will begin shipping merchandise from Soddy Daisy, Tennessee to Nashville any day if they haven't done so already; using that merchandise in promotional material and advertisements for the Nashville Glow Show; and publicly displaying it to what Defendants boast will be approximately 200,000 expected visitors. See Johnston Decl. at ¶ 18 (attached as **Exhibit A** to NOF).

Defendants' infringement of Enchant's copyright-protected sculptures and its theft of Enchant's trade secrets will erode Enchant's opportunity to distribute its unique products;

weaken its ability to fully control the reproduction, importation, and public display of its works; reduce its control over its intellectual property; diminish its competitive position in the market; reduce its control over the marketing strategy for the works; harm its goodwill; and likely cause confusion for consumers who encounter Enchant's copyright-protected sculptures and also encounter similar sculptures at the Nashville Glow Show, leading them to believe that Enchant is affiliated with, or associated with, or endorses the Nashville Glow Show, which is untrue. Id. at ¶ 19.

Further information in expedited discovery would likely show the full extent of Defendants' actions and also reveal Defendants' plans for using any misappropriated or copied property in the Nashville Glow Show.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to issue a temporary restraining order and preliminary injunction. Fed. R. Civ. P. 65(a) & (b). A district court, in ruling on a request for preliminary injunctive relief, must consider the following four factors as to whether:

(1) The movant has a strong likelihood of success on the merits;

(2) The movant would suffer irreparable injury without the relief;

(3) The injunction would cause substantial harm to others; and

(4) The public interest would be served by the preliminary injunction.

Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000); Johnson v. Pritchard, No. 1-14-0113, 2015 WL 4211509, at *1 (M.D. Tenn. July 10, 2015).

The four factors are to be balanced against one another and are not rigid prerequisites that must be satisfied for granting the injunction. Id. "These factors simply guide the discretion of

the court; they are not meant to be rigid and unbending requirements." Sandison v. Michigan High Sch. Athletic Ass'n, Inc., 64 F.3d 1026, 1030 (6th Cir. 1995) (internal quotations omitted).

**ARGUMENT**

A.   **Likelihood of Success on the Merits**

As set forth below, the first factor is met because the Complaint, its exhibits, and the accompanying declarations demonstrate that Plaintiff will likely succeed on the merits for each of the causes of action.

   1.   **Copyright Infringement**

"The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Additionally, "direct copyright infringement occurs when anyone 'violates any of the exclusive rights of the copyright owner.'" Warner / Chappell Music, Inc. v. Blue Moon Ventures, Inc., No. 3:10-1160, 2011 WL 13281770, at *4 (M.D. Tenn. Oct. 21, 2011) (quoting 17 U.S.C. § 501(a)). These exclusive rights include "the rights to reproduce the copyrighted work and to create a derivative work based on it." Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 398, 2007 WL 4124287 (6th Cir. 2007). Furthermore, "[i]mportation into the United States, without the authority of the owner of copyright . . . is an infringement of the exclusive right to distribute copies." 17 U.S.C. § 602(a)(1). In short, copyright infringement contains just two elements: "(1) ownership of a valid copyright; and (2) copying constituent elements of the work that are original without authorization." Bridgeport Music, Inc., 508 F.3d at 398.

A plaintiff may show direct copying or "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two

{01951896.6 }

works at issue." Kohus v. Mariol, 328 F.3d 848, 854 (6th Cir. 2003) (quoting Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir.1999)). When there is direct copying, the only remaining question is whether the defendant was authorized to copy the work in question. See e.g., Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1039 (D.N.J. 1990).

With regards to an inference of copying: "Access is essentially hearing or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy." Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004) (internal quotations omitted). "[W]here the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." Id. (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000) (stating that under the "inverse ratio rule," a lower standard of proof of similarity is required where a high degree of access is shown); Arnstein v. Porter, 154 F.2d 464, 469 (2d Cir. 1946) (stating that "a case could occur in which the similarities were so striking that we would reverse a finding of no access, despite weak evidence of access (or no evidence thereof other than the similarities)")).

This Court has stated that "the question of substantial similarity can usually be decided on the basis of the works themselves and rarely, if ever, involves questions of credibility, the peculiar province of the jury. Also, while judges 'may not be qualified literary critics, [they] are fitted by training and experience to compare literary works and determine whether they evidence substantial similarity.'" Montana Connection, Inc. v. Moore, No. 3:12-CV-0824, 2015 WL 5773492, at *12 (M.D. Tenn. Sept. 30, 2015) (quoting Murray Hill Pub's v. Twentieth Century Fox Film Corp., 361 F.3d 312, 321 (6th Cir. 2004) (citations omitted). To determine substantial similarity, a court must resolve "whether a lay observer would consider the works as a whole substantially similar to one another." Murray Hill, 361 F.3d at 320. "[W]here . . . the subject

matter is not complex or technical . . . expert testimony will seldom be necessary to determine substantial similarity." Stromback, 384 F.3d 283, 295 (6th Cir. 2004).

Here, a comparison of Plaintiff's design files with Defendants' design files reveals that Defendants' designs are identical to, or are strikingly similar to, or are substantially similar to Plaintiff's designs. See **Exhibit T** to NOF. If built, Defendants' sculptures infringe Plaintiff's copyright-protected Works.

Wallain and Stacey may additionally be held contributorily or vicariously liable for copyright infringement. Contributory infringement occurs "when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." Id. (quoting Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir.2004)). Vicarious liability exists when one "enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." Id. Further, a certificate of registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Varsity Brands, Inc. v. Star Athletica, LLC, 799 F.3d 468, 477 (6th Cir. 2015), aff'd sub nom. Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017) (quoting 17 U.S.C. § 410(c)). In the present case, Plaintiff owns the copyright to the original Works, which Plaintiff registered with the U.S. Copyright Office. See Certificates of Registration at **Exhibits D through O** to NOF. All of Plaintiff's Works were published between 2016 and 2017, as stated in the certificates of registration. Id.

Wallain had direct access to the designs for the original works (which were previously held as password protected secrets) via the Storage Account. See Johnston Decl. at ¶ 8 (attached as **Exhibit A** to NOF). Wallain accessed the designs for these works without Enchant's authority or knowledge, see id. at ¶ 12, and shared them with companies for unauthorized

production in China.  See Liang Decl. at ¶¶ 7-15 (attached as **Exhibit C** to NOF).  Ms. Liang took a picture of a polar bear at the Evermore fabricator company in China that had been directly copied from Enchant's design, and she saw Enchant's deer sculptures that had been made for Defendant Wallain as well.  Id. at ¶ 11-12.  This copying directly violated Plaintiff's exclusive copyright under 17 U.S.C. § 501(b).

Additionally, Ms. Liang obtained a shipping document showing that goods were shipped from Evermore and imported into the United States for Defendant Wallain, Defendant Exhibau, and Defendant Glowco.  Id. at ¶ 13.  Importing infringed goods violates Plaintiff's exclusive rights to import and distribute copies under 17 U.S.C. § 602(a)(1).

Furthermore, it is believed that Defendants plan to use infringing goods at the Nashville Glow Show that will begin November 22, 2019.  This would infringe Plaintiff's exclusive right to display the copyrighted sculptures publicly.  See 17 U.S.C. § 106(5).  Since an injunction may also be granted to *prevent* threatened copyright infringement, this is another basis for the injunction.  17 U.S.C. § 502(a).

For these reasons, Plaintiff has shown a likelihood of success on the merits for copyright infringement, and expedited discovery will likely show further evidentiary support for this claim.

### 2. Misappropriation of Trade Secrets (Tenn. Code Ann. § 47-25-1701 *et seq*.)

It is unlawful to misappropriate another's trade secret.  As is relevant to the present motion, *misappropriate* means the nonconsensual disclosure of another's trade secret by someone who (1) improperly acquired the trade secret, or (2) who, at the time of the disclosure or use, knew or had reason to know that the trade secret was (a) derived from a person who acquired it by improper means, (b) acquired under circumstances "giving rise to a duty to maintain its secrecy or limit use," or (c) derived from a person who owed a duty to Plaintiff to

{01951896.6 }

maintain the secrecy or limit the use. Tenn. Code Ann. § 47-25-1702(2). Acquisition through *improper means* includes theft, breach of a duty to maintain secrecy or limit use, and electronic espionage. Id. *Trade secret* means any information that has "independent economic value, actual or potential," not being generally known or readily ascertainable by others who can gain economic value from the information and is subject to reasonable efforts for secrecy. Id. at § 47-25-1702(4). Under the law, actual or threatened misappropriation, which includes actual or threatened use, may be enjoined. *See* Id. at §§ 47-25-1702(2)(B) (definition for misappropriation), § 47-25-1702.

Plaintiff created works that were novel and valuable, as they are used in the Christmas events market, and are imperative for Enchant's Christmas business. Competitors could gain value by using Plaintiff's works for their own benefits in similar events. Plaintiff maintained reasonable secrecy over the works as Plaintiff kept the designs for these works password protected on Plaintiff's Storage Account. See Johnston Decl. at ¶ 8 (attached as **Exhibit A** to NOF). Additionally, all persons with access, including Defendant Wallain, had a duty to keep the information confidential. Id. at ¶ 8. Thus, this information constituted trade secrets.

Defendant Wallain's contract work with Plaintiff was limited in time and scope and in no way authorized him to access, use, or disclose Plaintiff's trade secrets to outside persons after his work for Plaintiff ended. Id. at ¶ 9. He accessed the trade secrets on Plaintiff's Storage Account without authorization and then disclosed them to workers at his Exhibau company and sent designs to China for fabrication. See Johnston Decl. at ¶ 13 (attached as **Exhibit A** to NOF); Liang Decl. at ¶¶ 9-12, 15 (attached as **Exhibit C** to NOF). This was theft and a breach of Defendant Wallain's duty to maintain the trade secrets and to limit his use of them, especially because these actions were completely unauthorized and post-employment.

Therefore, Plaintiff's claim for theft of trade secrets will succeed on the merits as Defendants should be required to return to Plaintiff all stolen materials, and Defendants' actual or threatened use of Plaintiff's trade secrets should be enjoined pursuant to Tenn. Code Ann. § 47-25-1703(a). Expedited discovery will likely provide further evidentiary support for exactly what trade secrets Defendant Wallain accessed without authorization and what trade secrets and confidential material Defendants still have in their possession that belong to Plaintiff and must be returned.[1]

### 3. Violation of Defend Trade Secrets Act (18 U.S.C. § 1832 *et seq*.)

Whoever – with the intent to convert a trade secret that is related to a product or service used for or intended for use in interstate or foreign commerce for someone's economic benefit, and knowing that the offense will injure the trade secret owner – knowingly: (1) steals or misappropriates without authorization; (2) copies, duplicates, downloads, sends, or communicates; (3) receives or possesses, knowing the trade secret has been obtained without authorization; (4) attempts any of the previous; or (5) conspires to commit any of the previous, is liable under the federal Defend Trade Secrets Act. See 18 U.S.C. § 1832(a).

As previously mentioned, Defendant Wallain wrongly misappropriated and stole Plaintiff's trade secrets without any authorization from Plaintiff, and Defendant Wallain communicated the trade secrets to Exhibau workers and Chinese companies. Therefore, since the trade secrets have been used and are planned for use in interstate and foreign commerce, Defendants' actions violate the Defend Trade Secrets Act. See 18 U.S.C. §§ 1832(a) (regarding

---

[1] After the misappropriation, Plaintiff obtained copyright registrations for what is believed to be only some of the accessed materials. Expedited discovery will likely help to distinguish between exactly what misappropriated materials are presently still trade secrets and what have subsequently obtained copyright registration.

interstate or foreign commerce), 1837 (regarding conduct outside of the United States). Based upon the facts presented above, Plaintiff will likely succeed on the merits of its claim for violation of the Defend Trade Secrets Act.

**B.     Irreparable Injury to Plaintiff**

The second factor in determining whether to enter the injunctive relief requested is the likelihood of irreparable harm to Plaintiff. In a copyright infringement and misappropriation of trade secrets case like the present action, irreparable harm is presumed where a plaintiff demonstrates a likelihood of success on the merits. Sony/ATV Publ'g, LLC v. Marcos, 651 Fed. Appx. 482, 487 (6th Cir. 2016); see also Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc., No. 3:14-CV-1929, 2015 WL 13030253, at *4 (M.D. Tenn. Sept. 25, 2015); Schenck v. Orosz, No. 3:13–CV–0294, 2013 WL 5963557, at *6 (M.D. Tenn. Nov. 7, 2013) ("When plaintiffs show a reasonable likelihood of success on their copyright infringement claims, the plaintiffs are entitled to a rebuttable presumption of irreparable harm"). As set forth above, Plaintiff has demonstrated a likelihood of success on the merits and therefore irreparable harm is presumed.

Yet, even without any presumption, Plaintiff has shown a likelihood of irreparable harm. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages," and an injury is not fully compensable by money damages "if the nature of the plaintiff's loss would make the damages difficult to calculate." Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012); Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 550 (6th Cir. 2007). The irreparable injury must be "likely in the absence of an injunction." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Irreparable harm factors may include the inability to control the exploitation of one's own works, loss of good will, loss of control over one's property, loss of the opportunity to

distribute one's own unique products, and diminishment of one's competitive position in the marketplace. See e.g. Warner / Chappell Music, Inc., No. 3:10-1160, 2011 WL 13281770, at *5 (M.D. Tenn. October 21, 2011); see also Tom Doherty Associates, Inc. v. Saban Entm't, Inc., 60 F.3d 27, 38 (2d Cir. 1995) ("Where the availability of a product is essential to the life of the business or increases business of the plaintiff beyond sales of that product . . . the damages caused by loss of the product will be far more difficult to quantify than where sales of one of many products is the sole loss. In such cases, injunctive relief is appropriate"). As set forth in the Johnston Declaration, all of these factors are present here.

Continued copyright infringement also constitutes irreparable injury. It is important to note that in cases involving the infringement of intellectual property rights, "[r]elief in the form of monetary damages alone would [normally] not meet the ends of justice . . . because this remedy would allow the infringement to continue" and "[m]onetary damages generally are not an adequate remedy against future infringement because the central value of holding" an intellectual property right is to exclude others from using the protected product. Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006). In its majority opinion, the Supreme Court in eBay v. MercExchange, L.L.C. – a case which discussed copyright and patent principles – repeatedly noted the frequency with which injunctions prohibiting infringement are granted. See also Custom Designs of Nashville, Inc. v. Alsa Corp., 727 F. Supp. 2d 719, 726 (M.D. Tenn. 2010) ("Notably, in concurring opinions in the eBay case, seven justices concluded that where patent infringement was found, the 'vast majority' of cases resulted in injunctive relief").

In the present case, Plaintiff spent a great amount of time and resources to develop its protected works, keep its information secret, and create a product that brought great joy to the

public and corresponding business to Plaintiff. Defendants' theft of Plaintiff's trade secrets and copying of Plaintiff's works undermines its exclusive rights. Rather than Plaintiff being able to exclusively control the use and distribution of its works, Defendant has and seeks to continue to unlawfully take away these rights. Plaintiff should have sole control over all of its property, including intellectual property. Yet, Defendants have stolen Plaintiff's property and are using it to build their own businesses. Such actions diminish Plaintiff's place in the market and overall business value, constitute loss of opportunity for Plaintiff to be the first business to introduce its products into Nashville and other markets, and deprive Plaintiff of the fair business opportunities it has worked hard for. See Johnston Decl. at ¶ 5 (attached as **Exhibit A** to NOF). Accordingly, the court should enjoin Defendants' unlawful violations of Plaintiff's rights or Plaintiff will suffer irreparable injury.

### C.  Potential Hardship to Others

The harm to others, including Defendants, by entering the injunctive relief requested is incomparable to the harm Defendant's actions will cause Plaintiff because Defendant cannot enjoy the benefits of an illegal act. The hardship to Defendants would be "the loss of a stream of revenue which was provided in the first place by illegal conduct," because they cannot infringe Plaintiff's copyrights or use the misappropriated information in their businesses. See Custom Designs of Nashville, Inc., 727 F. Supp. 2d 719, 727 (M.D. Tenn. 2010). This hardship "is not sufficient" to defeat an injunction. See id. (citing Smith & Nephew, 466 F. Supp. 2d 978, 984 (W.D. Tenn. 2006)). While Plaintiff would suffer the previously mentioned hardships if the injunction was not granted, Defendants face "no hardship" in refraining from willful infringement. See Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006); See also Cooler Ink

Sols., Inc. v. Blue Ocean Holdings, Inc., No. 3:14-CV-1706, 2015 WL 5774671, at *2 (M.D. Tenn. Sept. 30, 2015). For these reasons, this factor favors the injunction.

D.   **Public Interest Is Served by the Injunction**

Finally, the public good will be served by the entry of the relief requested. This Court has stated that "it is virtually axiomatic that the public interest can only be served by upholding copyright protections." Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc., No. 3:14-CV-1929, 2015 WL 13030253, at *1 (M.D. Tenn. Sept. 25, 2015), aff'd sub nom Sony/ATV Publ'g, LLC, 651 Fed. Appx. 482 (6th Cir. 2016). Honoring and upholding copyright law and preventing the misappropriation of trade secrets serves the public interest and helps to preserve the integrity of our legal system and society. There is no competing public interest for allowing Defendants to persist in their unlawful actions. As such, the public policy is well served by the entry of the injunctive relief requested.

## CONCLUSION

Plaintiff respectfully urges the Court to grant its Motion for a Temporary Restraining Order.

Respectfully submitted,

/s/ Stephen J. Zralek
Stephen J. Zralek (BPR No. 18971)
Maria Q. Campbell (BPR No. 35515)
Shea T. Hasenauer (BPR No. 35515)
BONE McALLESTER NORTON PLLC
511 Union Street, Suite 1600
Nashville, TN  37219
(615) 238-6305 Telephone
(615) 687-2763 Facsimile
szralek@bonelaw.com
shasenauer@bonelaw.com

*Counsel for Plaintiff Enchant Christmas Light Maze & Market Ltd.*

# CERTIFICATE OF SERVICE

I certify that we served a copy of this document on October 30, 2019 upon:

Glowco, LLC
c/o Daniel Kris Wiatr, its Registered Agent
1212 8th Ave. S.
Nashville, TN 37203-5060
*Via Hand Delivery*
*And Via Email to Chris Stacey, its CEO at his last known email address: ccs@rocktheocean.com*

Exhibau US LLC
c/o Patrick Wallain, its Registered Agent
202 Depot St.
Soddy Daisy, TN 37379-6405
*Via Overnight Mail*
*And Via Email to Patrick Wallain's last known email address: patrick@exhibau.com*

Chris Stacey
Glowco, LLC
1212 8th Ave. S.
Nashville, TN 37203-5060
*Via Hand Delivery*
*Via Email to his last known email address: ccs@rocktheocean.com*

Patrick Wallain
Glowco, LLC
1212 8th Ave. S.
Nashville, TN 37203-5060
*Via Hand Delivery*
*Via Email to his last known email address: patrick@exhibau.com*

                                        */s/* Stephen J. Zralek