# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

ENCHANT CHRISTMAS LIGHT MAZE    )
MARKET LTD,                             )
                                      )      **No. 3:19-cv-00966**
        **Plaintiff,**              )
                                        )      **JURY DEMAND**
**v.**                                             )
                                        )      **JUDGE TRAUGER**
GLOWCO, LLC, EXHIBAU US LLC,      )
PATRICK WALLAIN, and CHRIS STACEY, )
                                        )
        **Defendants.**             )

---

## DEFENDANTS' JOINT MEMORANDUM OPPOSING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

---

As Defendants will prove at the November 7 hearing, the hearsay, strained inferences, and innuendo Enchant used to obtain a temporary restraining order are wrong.[1]

First, Glowco's sculptures were manufactured using designs that were independently created. *No drawing or design that came from Enchant has been used to manufacture any of Glowco's sculptures.* The independently-created designs used to make Glowco's sculptures will be presented to the Court. The Court should deny Enchant's motion for this reason alone.

Second, even though Defendants did not use any drawing or design that came from Enchant to make Glowco's sculptures, Enchant in fact has *no* protectable interest in the images and sculptures at issue. Enchant claims to own a copyright in a set of drawings purportedly made by two people in Ukraine. But these drawings are of generic, traditional images that are ubiquitous

---

[1] At the hearing, defendants will present live testimony from Patrick Wallain and Chris Stacey. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) ("[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held.") (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312-13 (11th Cir. 1998)).

during the holidays – including images taken directly from nature (*see*, *e.g.*, "Enchant's" polar bear cub and gettyimages photograph of actual polar cub on page 13) or that the Ukrainians themselves obviously copied from others (*see*, *e.g.*, "Enchant's" snowflake and the snowflake from a 2014 tutorial on how to draw the snowflakes depicted in Disney's movie "Frozen" on page 10). Such drawings are not protected by copyright. And the sculptures based on those same drawings are the very antithesis of a "trade secret" – Enchant publicly displays those sculptures, not just at its events but on websites and social media platforms, including Instagram. *Indeed, as detailed below, before filing this lawsuit in a bid to disrupt a new competitor's event, Enchant never treated these images and sculptures as proprietary.*

Third, Enchant in any event does not face any harm that could not be remedied with money. Generic depictions of wildlife, trees, snowflakes, trees, and ice crystals, as well as Glowco's version of Santa's Sleigh – which is based on a 3-D model of a sleigh bought on-line from a company in New Orleans for $75 – pose zero risk of consumer confusion. Enchant's claim to the contrary is belied by this fact alone: In late 2018, "Shine Lighting Group USA, Inc." (which Defendants believe is owned by Enchant's CEO, Kevin Johnston) *tried to get Glowco to buy many of the very sculptures at issue for use at the GLOW Nashville event*.[2] (Glowco bought a few of Shine's sculptures but not others, knowing it could design better versions – and it has.) Indeed, Defendants, those Glowco has hired to build and staff GLOW Nashville, and the Nashville community itself are the ones who face harm – in the case of Glowco, imminent and irreparable harm. Glowco has invested several million dollars in, and hired 200 people for, a large and logistically complex holiday event that must be built from the ground up and for which tickets

---

[2] For this and other reasons, it is far from clear that the drawings and sculptures Enchant claims to own even belong to Enchant.

have been pre-sold.  *That event will not be ready on opening night, November 22, if Defendants cannot immediately move the sculptures at issue to First Tennessee Park and begin construction.*

The Court should deny Enchant's bid to destroy a fledgling competitor premised on groundless intellectual property claims and timed to cause maximum disruption to the GLOW Nashville event.  Defendants request that, at the conclusion of the November 7 hearing, the Court deny Enchant's motion for a preliminary injunction and immediately dissolve the TRO.

## STATEMENT OF FACTS

### A.    Mr. Wallain's Work for Shine in 2016 and 2017.

In 2016, Shine Lighting Group USA, Inc. – *not* the plaintiff, Enchant – contracted with Patrick Wallain's company to provide consulting services, including design, manufacturing, and planning, in connection with the first "Enchant" event in Vancouver, Canada.  During his time working for Shine, no one indicated to Mr. Wallain that the design drawings to which he, and others outside the company, were given unrestricted access were confidential or proprietary.  Nor was he asked to sign any confidentiality or non-disclosure agreement.  When Mr. Wallain finished his work for Shine in May 2017, no one asked him to return or destroy anything.  Since Mr. Wallain and Shine parted ways, Enchant (or Shine) alone has controlled whether Mr. Wallain's Google Drive Account has access to the Enchant (or Shine) "Storage Account."  (*See* D.E. 2-2 at 12 n.1 (stating that Enchant controls access to its Storage Account).)  Yet, Enchant (or Shine) apparently has never terminated that access, even though it has been more than two years since Mr. Wallain's company worked with Shine.[3]  In short, Enchant's conduct before filing this lawsuit is incompatible with the claims it now makes.

---

[3] On Google Drive, you give access to a file by "sharing" it with a specific email address, and the recipient then has access to that file until the administrator of the account stops "sharing" it.  (*See* Stop,    limit,    or    change    sharing    –    Computer    -    Google    Drive    Help,

**B.      In January 2019, Shine Sells Sculptures to Glowco for Use in Nashville – And Then Tries to Buy Them Back.**

Because of his dealings and multiple communications with Chris Stacey, Kevin Johnston knew by December 2018 that Mr. Stacey intended to create a holiday attraction in Nashville that would include lighted sculptures.  That month, after the Enchant event in Arlington, Texas, Mr. Johnston offered to sell several of Shine's sculptures from that event to Glowco for Glowco's use at its show in Nashville.  Glowco bought some of these sculptures from Shine in January 2019, and Shine even threw in some ice crystals at no extra charge.  (*See* Attachment 1: Shine Invoice.) Glowco decided not to buy other Shine sculptures because Glowco concluded it could design and make more appealing versions of traditional holiday figures.

After the sale, Mr. Johnston contacted Mr. Wallain and asked to buy back Shine's sculptures.  Glowco declined.  The next time Defendants heard from Mr. Johnston, Shine, or Enchant was when Defendants were served with this lawsuit on October 30, 2019, just days before construction was scheduled to begin for GLOW Nashville.

**C.      Independent Creation of Glowco's Sculptures.**

In September 2018, Glowco hired Mr. Wallain's company, Exhibau, to provide consulting services in connection with the GLOW Nashville event.  Those services include financial modeling, structures design, and procurement.  In order to create an initial budget and determine the investment that would be required for the event, Mr. Wallain sent an Excel file to potential

---

https://support.google.com/drive/answer/2494893 (last accessed Nov. 2, 2019) (explaining "After you share a file, you can stop sharing a file at any time. You can also prevent someone you've shared with from changing or sharing your file.") *See also* Plaintiff's Expert Report at p. 3, fn.1, (D.E. 2-2 at 12).)  The administrator can terminate the sharing at any time in a few easy steps. (*See* Stop, limit, or change sharing - Computer - Google Drive Help, https://support.google.com/drive/answer/2494893.)  This same help article describes how to, among other security measures, place an expiration date on the access. *See id.*

manufacturers in China, solely to seek quotes to manufacture 38 items. As is typical in an RFP process that seeks quotes to manufacture items not yet designed, the Excel file contained "reference images" (that is, not full files), such as this elf:

| S No | Image | REF NAME | Asset ID | Description | LED Specifications | Height/ Length in mts | in Ft |
|---|---|---|---|---|---|---|---|
| 1 | | ELF | | WIRE FRAME ELF ( 4.6 mts x 2.76 mts x 2.8 mts) aluminum + PVC string light with cap 24V | LED electrical and quality control specifications in attached appendix **LED Colour:** **LED effect:** Steady brightness With only cable end, no driver, no plug Waterproof, outdoor use cable and connectors IP65 / Each asset MUST run from one single driver (max 600W) single pigtail to power - connections must be parallel not series | 4.6 | 15 |

To compile the 2-D reference images, Mr. Wallain searched his entire Google Drive using the global search function for the image at issue (e.g., "polar bear"). When Mr. Wallain does this, his Google Drive automatically draws files from any account for which that account's administrator continues to give Mr. Wallain access, and the results do not indicate the source folder of any particular file. It appears that as many as 5 of the 38 reference images included in the request for quotes may be images from Enchant's (or Shine's) account, to which Enchant (or Shine) continued to give Mr. Wallain access through at least August 2019. None of these reference images is sufficient to actually manufacture a sculpture.

Mr. Wallain used the initial quotes from potential manufacturers to create an initial budget for GLOW Nashville. That budget included funds to pay third-party designers to create the designs that would then be – and were – used to build sculptures for Glowco. Thus, the designs used to manufacture Glowco's sculptures were independently created, and no drawing or design from Enchant (or Shine) was used to manufacture any Glowco sculptures. The design drawings reflect this.

For example, on the left is the drawing of "Enchant's" snowflake, and on the right is Glowco's snowflake:

 

On the left is "Enchant's" Santa's Sleigh, and on the right is Glowco's Santa's Sleigh:

 

On the left are "Enchant's" ice crystals, with a computer rendering of Glowco's ice crystals

on the right:

 

Finally, on the left is the drawing of "Enchant's" tree and on the right is Glowco's tree:



The evidence presented at the November 7 hearing thus will show that the Chinese manufacturers that made Glowco's sculptures did so from independently-created design files, including the 3-D models necessary to make such sculptures.

### D. Impact if the Nashville Event Cannot Move Forward Immediately.

Located at First Tennessee Park, home of the Nashville Sounds, the GLOW Nashville event is scheduled to run from November 22 through December 31, 2019. Glowco has invested several million dollars to create this unique, large, and complex event and hired approximately 200 local workers to staff it. Additionally, approximately 250 independent contractors will be working to

support the event. Defendants expect 150,000 or more people will visit the event, many of whom have already bought tickets. The TRO has already disrupted critical logistics for the event; if Glowco is not able to begin construction with at least its ice crystals[4] on November 8, it is improbable the event can be ready by November 22.

## ARGUMENT

In determining whether to issue a preliminary injunction, the Court must consider: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

### A. ENCHANT IS NOT LIKELY TO WIN ON THE MERITS.

#### 1. Copyright Infringement Standard.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*, 499 U.S. 340, 361 (1991). In lieu of direct evidence of copying, a plaintiff may try to establish "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).[5]

---

[4] A large structure, the "Crystal Fortress," will be a focal point of the event.

[5] "When the similarity between two works is so striking that there is no plausible possibility of independent creation, the 'striking similarity' may dispense with the need for proof of access." *Trapani v. CBS Records, Inc.*, 857 F.2d 1475, at *3 (6th Cir. 1988) (unpublished). "The application of the 'striking similarity' doctrine is generally limited, however, to complex or sophisticated subject matter where independent creation would be exceptionally unlikely." *Id.* Therefore, this doctrine is not applicable here.

"Once a plaintiff establishes access and substantial similarity, the defendant may rebut the presumption of copying by showing independent creation of the allegedly infringing work." *Fogerty v. MGM Grp. Holdings Corp.*, 379 F.3d 348, 352 (6th Cir. 2004); *see also Ellis*, 177 F.3d at 507 ("[a]n inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work"); *Jones v. Blige*, 558 F.3d 485, 493 (6th Cir. 2009) (same); *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 110 (2d Cir. 2001) ("Under the Copyright Act, one may market a product identical to a copyrighted work so long as the second comer designed his product independently."); *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006) (same). As Nimmer has explained:

> It is clear that the plaintiff has the burden of proving both access and substantial similarity. Of course, those requirements are independent. Thus, even if the two works in question are substantially similar, plaintiff still cannot prevail unless it meets its burden "of producing significant, affirmative, and probative evidence to demonstrate that defendant had access to its claimed work." But the further question remains how far such proof, even when it does exist, extends. If the plaintiff offers clear and convincing evidence of both access and substantial similarity, is the trier of fact bound to hold that the defendant has copied from the plaintiff? The answer is "no," inasmuch as the trier may entirely believe both that the defendant had access to the plaintiff's work and that the two works are substantially similar, but nevertheless, reasonably conclude that the defendant independently created, rather than copied.

3 Nimmer on Copyright § 12.11 (2019) (footnotes omitted); *see also Feist*, 499 U.S. at 345-46 ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.").

With respect to validity of a copyright, "copyright protection extends only to a particular expression of an idea, and not to the idea itself. Simply because a work is copyrighted does not mean every element of that work is protected." *Boisson v. Banian, Ltd*., 273 F.3d 262, 268 (2d Cir. 2001) (citations omitted).

### 2. Defendants Independently Created Their Sculptures.

As described above, and as will be shown at the hearing, no drawing or design from Enchant (or Shine) was used to manufacture Glowco's sculptures. Enchant's copyright infringement claim fails for this reason alone. *See Fogerty*, 379 F.3d at 352.

### 3. The Sculptures are Not Sufficiently Original to Warrant Copyright Protection.

There appear to be twelve sculptures that are the subject of Enchant's motion: three polar bears, five deer, a tree, a group of ice crystals, a snowflake, and a version of Santa's Sleigh. (*See* Exhibit T, D.E. 2-20.) The snowflake is identical to the design of the snowflakes used in Disney's movie "Frozen." The bears, deer, tree, and ice crystals are simply images taken from nature and, thus, not copyrightable.

First, as shown above, Glowco's snowflake is markedly different from the snowflake Enchant claims to own. Glowco's snowflake was not copied from someone else's snowflake. *But Enchant's was.* Here is a side-by-side comparison of "Enchant's" snowflake and a snowflake pictured in a 2014 tutorial on how to draw a snowflake as depicted in Disney's "Frozen":



(*See* How to Draw Snowflakes from Disney Frozen Movie with Easy to Follow Steps - How to Draw Step by Step Drawing Tutorials, Nov. 12, 2014,

https://www.drawinghowtodraw.com/stepbystepdrawinglessons/2014/11/draw-snowflakes-disney-frozen-movie-easy-follow-steps/ (last visited Nov. 2, 2019).)  The snowflake on the right, which is from the Disney movie "Frozen," was posted on the internet in 2014, long before someone in Ukraine purported to "create" the snowflake design Enchant now claims to own.  Enchant's alleged snowflake is not original and not copyrightable – if that snowflake design belongs to anyone, it belongs to Disney.

With regard to Enchant's deer, bears, tree, and ice crystals,

a collection of unprotectable [animal] elements—pose, attitude, gesture, muscle structure, facial expression, coat, and texture—may earn "thin copyright" protection that extends to situations where many parts of the work are present in another work.  But when, as here, the only areas of commonality are elements first found in nature, expressing ideas that nature has already expressed for all, a court need not permit the case to go to a trier of fact.

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 770 (9th Cir. 2018) (emphasis added); *see also Satava v. Lowry*, 323 F.3d 805, 810-811 (9th Cir.), *cert. denied*, 540 U.S. 983 (2003) (sculptures of jellyfish not sufficiently original to warrant copyright protection); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) (finding no copyright infringement where both parties had produced turtle pins with ten gems on the back of the carapace and explaining, "since all turtles are created more or less along the same lines, appellant cannot, by obtaining a copyright upon one design of a turtle pin, exclude all others from manufacturing gold turtle pins on the ground that they are substantially similar in appearance").

As the Southern District of New York recently explained:

Courts routinely apply the *scènes à faire* doctrine (or analogous reasoning) to "elements of pictorial, graphic, or sculptural works that do no more than depict an animal's natural appearance," *L.A. T-Shirt & Print, Inc. v. Rue 21, Inc.*, No. 16-CV-5400 (RA), 2017 U.S. Dist. LEXIS 131845, 2017 WL 3575699, at *5 (S.D.N.Y. Aug. 17, 2017), as such features inhere in the subject animals themselves rather than flow from any artist's imagination.  *See, e.g.*, *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 551 (5th Cir. 2015) ("[A]natomical features on

replicas of animals are ideas not entitled to copyright protection."); *Blehm v. Jacobs*, 702 F.3d 1193, 1204 (10th Cir. 2012) ("[C]ommon anatomical features such as arms, legs, faces, and fingers . . . are not protectable elements."); *Billco Int'l, Inc. v. Charles Prods., Inc*., 776 F. Supp. 2d 105, 114 (D. Md. 2011) ("[W]hen works contain realistic depictions of animals . . ., the scope of the copyright protection for the work may be limited because the features and behavior of animals in nature are part of the public domain."). While the "*original expression* of an animal's appearance may be eligible for copyright protection," *L.A. T-Shirt*, 2017 U.S. Dist. LEXIS 131845, 2017 WL 3575699, at *5 (emphasis added) (invoking the example of Franz Marc's blue horses), the few elements of the Tinkerbelle picture's depiction of a dog that Carrell even claims to be original are (at best) modestly so, and it is the unoriginal elements that predominate.

*Carrell v. Origami Owl, LLC*, 2019 U.S. Dist. LEXIS 49522, at *5-6 (S.D.N.Y. Mar. 25, 2019).

As other courts have recognized:

In the context of realistic wildlife sculpture, one court has noted that a purported copyright holder "may not prevent others from copying aspects of his sculptures resulting from either [the animal's]-physiology or from [the animal's] depiction in the [particular artistic] medium." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). "Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters." *Id.* at 813.

*Sportsmans Warehouse, Inc. v. Fair*, 576 F. Supp. 2d 1175, 1180-81 (D. Colo. 2008); *see also*

*Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("No copyright protection may be

afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily

follow from the idea of such dolls . . . [A]ny similarity in expression resulting from either the

physiognomy of dinosaurs or from the nature of stuffed animals [is not protectable]"); *Arc v. S.S.*

*Sarna, Inc*., 621 F. Supp. 916, 921-22 (E.D.N.Y. 1985) ("[T]he idea of a sculpture of a particular

animal, be it a swan, peacock, or unicorn, cannot be monopolized by anyone under the copyright

law."); *TailGate Beer, LLC v. Boulevard Brewing Co*., No. 3:18-cv-00563, 2019 U.S. Dist. LEXIS

179073, at *36 (M.D. Tenn. Oct. 16, 2019) ("No copyright protection may be afforded to elements

of expression that naturally flow from the idea of an animal sculpture." (quoting *Bandana Co. v. TJX Cos.*, Case No. 05-206, 2005 U.S. Dist. LEXIS 17342, at *2 (W.D. Ky. May 29, 2005))).

Here, for example, is a drawing in which Enchant now claims a copyright, next to a stock photograph of an actual polar bear cub from the internet:



"2017 Polar Bear Cub No. 01"
<u>See</u> Exhibit E to the Notice of Filing

(*See* Polar Bear Cub Standing On Hind Legs High-Res Stock Photo - Getty Images, https://www.gettyimages.com/detail/photo/polar-bear-cub-standing-on-hind-legs-high-res-stock-photography/490052-002?adppopup=true (last visited Nov. 2, 2019).)

Other than the whimsical deer antlers (which are not at issue; Glowco wanted to give its wildlife a more realistic look, and its own designs use natural-appearing antlers), Enchant's other bears and deer are simply images of animals as they appear in nature. (*See* Exhibit T Summary Chart at D.E. 2-20.) Similarly, Enchant's tree and ice crystals look like trees and ice crystals as they appear in nature. (*Id.*) These drawings and sculptures are not sufficiently original to warrant copyright protection (although, again, they in any event were *not* used to manufacture Glowco's own sculptures).

The following are comparisons of Enchant's sculptures with actual animals:





**4. Defendants' Sculptures Are Not Substantially Similar.**

Any similarities between Glowco's sculptures and Enchant's sculptures arises from non-protectable elements (pose, gesture, muscle structure, trunk, branches, crystalline structure, etc.). A tree is a tree, and a deer looks like a deer. Therefore, even if Enchant's copyrights were otherwise valid, and even if Glowco's sculptures had not been independently created, Enchant's infringement claim would still fail.

**5. The Drawings and Sculptures at Issue Are Not Trade Secrets.**

Enchant's sculptures could be seen, photographed, and even measured by any of the hundreds of thousands of people Enchant alleges have attended "Enchant Christmas." The sculptures also appear on social media accounts, including Enchant's Instagram, Twitter, and Facebook accounts. Similarly, the drawings in which Enchant claims a registered copyright are a matter of public record. Enchant, therefore, cannot claim "trade secret" status for either the drawings or the sculptures. Tenn. Code Ann. § 47-25-1702 (a "trade secret" (1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."); *see also* 18 U.S.C. § 1839 (same).

In addition, as shown above, neither Enchant nor Shine historically acted as if these drawings or associated sculptures are proprietary in any manner. Neither made any effort – let alone took reasonable steps – to secure the now-alleged "secrecy" of the drawings at issue, which Enchant (or Shine) made available to people outside the company – in Mr. Wallain's case, for more than two years after his company stopped working with Shine. Tenn. Code Ann. § 47-25-1702(2) (misappropriation of a trade secret requires that defendant knew the trade secret was acquired by improper means, or that defendant disclosed or used the trade secret without the owner's express or implied consent); *see also* 18 U.S.C. § 1839(5) (same). Enchant has not, and cannot, show a strong likelihood of success on its trade-secrets claims.

**B. ENCHANT DOES NOT FACE IRREPARABLE HARM.**

The harm Enchant alleges can be summarized as follows: "Such actions diminish Plaintiff's place in the market and overall business value, constitute loss of opportunity for Plaintiff

to be the first business to introduce its products into Nashville and other markets, and deprive Plaintiff of the fair business opportunities it has worked hard for." (D.E. 4 at 15.)

First, it is axiomatic that Enchant has no right to stop others from putting on large holiday light events in Nashville, or elsewhere.[6] *See, e.g.*, *Mihalek Corp. v. Michigan*, 814 F.2d 290, 295 (6th Cir. 1987) ("copyright protection extends to expression but not ideas").

Second, the harm Enchant alleges is speculative and could easily be remedied with money, such as a reasonable royalty. *See, e.g.*, *New Era Publications Int'l, ApS v. Henry Holt & Co.*, 873 F.2d 576, 597 (2d Cir. 1989) ("To be actionable, invasions of the copyright must effect economic harm and . . . an award of damages should be preferred to the injunctive remedy."); *Dow Jones & Co. v. Bd. of Trade of City of Chicago*, 546 F. Supp. 113, 122 (S.D.N.Y. 1982) ("None of the harm speculated by [plaintiff], whether lost potential licensing . . . or impaired reputation, derives from the copyright infringement alleged. If any damage has been wrought by [defendant's] copying, and if that copying constitutes infringement, money damages, either actual or statutory, will adequately compensate [plaintiff]."); *Clark v. Childs*, No. 17-CV-4895 (LDH) (SJB), 2017 U.S. Dist. LEXIS 155847, at *6-7 (E.D.N.Y. Sep. 22, 2017) ("Even if the Court were to credit Plaintiff's unsupported contentions, they are nevertheless insufficient to support the grant of injunctive relief. That is, the Court is at a loss as to how Plaintiff's purported harms could not be remedied through money damages, which is the preferred remedy in copyright cases.")

Third, the claim that Enchant will be harmed if another business uses one or more of "its" sculptures in a holiday light event is belied by Shine's selling several of its sculptures to Glowco

---

[6] Events at Cheekwood and Opryland have existed in Nashville for many years. *See* Voted the Best Event in Nashville, Holiday LIGHTS at Cheekwood, https://cheekwood.org/calendar/cheekwood-holiday-lights-event-nashville/ (last visited Nov. 4, 2019); Most Unforgettable Christmas Ever!, http://www.gaylordhotelsnews.com/ChristmasVideoGaylordOpryland (last visited Nov. 4, 2019).

earlier this year. A centerpiece of GLOW Nashville will be a 100' tree, which it bought from Shine.

In short, Enchant has not sustained its burden to prove "both certain and immediate" harm that cannot be remedied by monetary damages. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991); *Ky., Educ. & Workforce Dev. Cabinet, Office for the Blind v. United States*, 759 F.3d 588, 600 (6th Cir. 2014) ("The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success.").

## C. DEFENDANTS FACE IMMINENT AND IRREPARABLE HARM.

Enchant knows what is involved in setting up a show such as GLOW Nashville, and timed its TRO application for maximum disruption. As a result of that TRO, Glowco has already had to delay work. If the injunction remains in place beyond November 7, Glowco is at substantial risk of not being able to meet the tight schedule to open on November 22; the impact of that would be felt not just by Defendants but by the more than 200 people who plan to work on and at the event, as well as those who plan to attend, many of whom have already bought their tickets.

## **CONCLUSION**

Enchant improperly seeks to prevent ordinary competition. All relevant factors weigh against Enchant's motion. Defendants respectfully request that the Court upon hearing the evidence deny that motion and immediately dissolve the TRO.

Respectfully submitted,

/s Michael A. Johnson

John R. Jacobson (#14365)
D. Alexander Fardon (#13787)
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37203
(615) 320-3700
jjacobson@rwjplc.com
afardon@rwjplc.com

*Attorneys for Glowco, LLC and Chris Stacey*

John J. Griffin. Jr. (#15446)
Michael A. Johnson (#30210)
Kay Griffin, PLLC
222 Second Avenue North, Suite 340-M
Nashville, Tennessee 37201
(615) 742-4800
john.griffin@kaygriffin.com
michael.johnson@kaygriffin.com

*Attorneys for Exhibau US LLC and*
*Patrick Wallain*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing response has been served via CM/ECF upon all counsel of record:

Stephen J. Zralek
Shea T. Hasenauer
Maria Q. Campbell
Bone, McAllester & Norton, PLLC
511 Union Street
Suite 1600
Nashville, TN 37219

John R. Jacobson
D. Alexander Fardon
Riley, Warnock & Jacobson
1906 West End Avenue
Nashville, TN 37203

on this 6th day of November, 2019.

/s Michael A. Johnson